THE STATE v. BURLINGAME, *Appellant.*

Division Two, November 21, 1898.

1. **Bank Deposits:** PROSECUTIONS: BAR.  An acquittal of an officer of an insolvent bank of the charge of having received money on deposit from one person, is not a bar to a subsequent prosecution of the same officer for receiving money on deposit in the same bank from another person at a different time.  They are separate offenses, and require different proof.

2. **Indictments:** CONTINUANCES: DISCHARGE.  One who has been indicted and committed to jail, and has taken his case to another county by change of venue, where the State at the next term entered a *nolle*, and who was again indicted and the venue changed again to another county, where another *nolle* was entered, can not plead such continuances in bar to a third indictment in the county where the crime was committed, on the statutory ground that two terms of a court having jurisdiction of the offense were held after the first indictment before he was brought to trial on the last indictment.

3. **Bank Deposits:** STATEMENTS OF WIFE.  The statements made by a wife in the presence of her husband can not be used against him unless made in respect to some matter in which she has been his agent.

4. ———: ———: PROSECUTIONS.  The wife can not without her husband's consent be a witness against him, in prosecutions for having as a banker received money on deposit knowing the bank to be insolvent, nor can any statement made by her in his presence be introduced in evidence against him.

5. ———: CORPORATION: NAME.  The words "Springfield, Mo.," used after the words "Bank of Commerce," in the certificate of incorporation, are no part of the name of the bank.

6. ———: DEEDS OF OTHER PARTIES. Defendant as president of a bank was indicted for receiving money on deposit knowing the bank to be insolvent at the time. One Parce was a stockholder of the bank, and the State introduced copies of several deeds made by him to other persons the day the bank failed. *Held*, that they had no tendency to establish any issue involved in the case, and were inadmissible.

7. ———: ———: ORIGINALS LOST: COPIES. Before copies of deeds can be used in evidence in criminal prosecutions, it must first be shown to the court by the oath or affidavit of the prosecuting attorney, or some other person knowing the fact, that the deeds were lost or not within the power of the representatives of the State to produce them.

8. ———: OTHER DEPOSITS. Where a banker is prosecuted for receiving money on deposit, knowing the bank to be insolvent, each deposit, if received under circumstances prohibited by statute, is a separate offense, and evidence of deposits other than the one made the basis of the prosecution, is not admissible to show his knowledge of the condition of the bank. Nor if he received the money in person, is such evidence either competent or necessary to show that the bank was receiving deposits at a time when he knew it was insolvent.

9. ———: PANICS. Evidence of a general panic in financial matters immediately prior to the bank's failure, and of resulting business disaster in the same town immediately following such failure, is not competent to exculpate defendant for receiving a deposit five days prior thereto, unless he show by such evidence that the failure of his bank was produced by the failure of some of its correspondents, of which he had no notice at the time of the deposit.

10. ———: PRIMA FACIE CASE: INSTRUCTION. An instruction telling the jury that a *prima facie* case of defendant's guilt (of receiving money on deposit in his bank, knowing it to be insolvent at the time), is made by proof of the deposit and the insolvency of the bank, is not error if another instruction given for defendant tells them that the constituent elements of the crime must be proven beyond a reasonable doubt.

*Appeal from Jasper Circuit Court.*—HON. JOSEPH D. PERKINS, Judge.

REVERSED AND REMANDED.

*William B. Skinner* for appellant.

(1) A prosecution, conviction and sentence for the receiving of a bank deposit during the period of

insolvency, is a bar to other prosecutions for acts occurring during the same period. *Comm. v. Rockafellow*, 2 Lackawana Legal News, 338. (2) The reception of deposits by a banker, during a given period of insolvency, is to be deemed and taken as but a single continuing offense, like that of embezzlement, by a servant or clerk, during a given period, or a prosecution for adultery or bigamy—there can be no conviction, on a date, anterior, to a former indictment for the same offense. *People v. Cox*, 65 N. W. Rep. 283; *Snow v. U. S.*, 120 U. S. 274; *Nielsen v. U. S.*, 131 U. S. 176; *Crepps v. Durden*, 2 Cowper 640; *People ex rel. v. Liscomb*, 15 Stickler, 559; *State v. Benham*, 7 Conn. 414; *State v. Fayetteville*, 2 Murphy, 371; *Wright v. State*, 17 Tex. 152; *Lorton v. State*, 7 Mo. 55. (3) The question as to whether the Bank of Commerce, of which defendant was president, on the twelfth day of May, 1893, on the twenty-ninth day of June, 1893, and on the tenth day of July, 1893, and between said dates, was insolvent and in failing circumstances, and whether defendant, as its president, had knowledge of and well knew such fact, were issues involved and submitted for judicial determination between the State and the defendant in the two former trials, and it was by the verdicts and judgments rendered, judicially ascertained, that the defendant, at the time of the reception of the deposit, to wit, July 7, 1893, did not know that said Bank of Commerce was in failing circumstances. This constitutes a complete answer on the part of defendant, to the charge in this indictment and constitutes an effectual bar to his prosecution thereunder. *Duchess of Kingston Case*, 20 Howell's State Trials, 355; *Coffey v. U. S.*, 116 U. S. 436; *Hunt v. State*, 86 Ala. 604; *Herera v. State*, 34 S. W. Rep. 943; *Moore v. State*, 25 S. W. Rep. 1120; *Comm. v. Ellis*, 35 N. E. Rep. 773;

*Comm. v. Evans*, 101 Mass. 25; *Railroad v. U. S.*, 168 U. S. 48; *Sly v. Hunt*, 159 Mass. 151; *State v. Cooper*, 13 N. J. L. 361; *Wilcox v. State*, 6 Lea, 571; *Scott v. U. S.*, Morris, 142; *Hart v. State*, 25 Miss. 378; *Burns v. People*, 1 Parker, 182; *State v. Mikesell*, 30 N. W. Rep. 474; *Carson v. People*, 36 Pac. Rep. 551. (4) Defendant's motion for discharge, because of continuances, should have been sustained. R. S. 1889, secs. 4222 and 4223; *State v. Wear*, 145 Mo. 162; *State v. Cox*, 65 Mo. 29. (5) The admission of the testimony of the witness Woodward, as to the declarations of defendant's wife, was reversible error. *Hoffman v. Hoffman*, 126 Mo. 493; *State v. Willis*, 24 S. W. Rep. 1008. (6) The court erred in admitting in evidence the certificate of incorporation of "Bank of Commerce, Springfield, Mo." This did not support the allegation of the indictment which charged the defendant with being the president of "Bank of Commerce," and as such received the deposit in question. The by-laws as well as the certificate of incorporation, shows the name of the bank to be "Bank of Commerce, Springfield, Mo.," not "Bank of Commerce." *Hite v. State*, 9 Yeager, 357. (7) The court committed error in admitting the evidence of Mrs. Horton and Mrs. Dickinson. Their deposits were made five months before the date of the Graham & Son deposit, and long before the bank is claimed to have been insolvent. It is apparent that the purpose of the State in offering the evidence was simply to make profert of these two unfortunate widows, as a basis for the unwarranted attack on the defendant, in the argument of the case to the jury, by the associate counsel for the state. (8) It was error for the court to refuse to permit the defendant to state whether or not his bank would have been forced to suspend had it not been for the panic. Aside from the fact that the bank did suspend payment to its depositors and make

State v. Burlingame.

an assignment on July 11, there is nothing to show that its assets were not sufficient to meet its liabilities.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Where several deposits are received from different persons by a banker with a knowledge of its being insolvent and in a failing condition at the time, each transaction within and of itself constitutes a separate offense within the scope and meaning of our statutes. (2) In order for a former prosecution to be a good and valid plea in bar to a subsequent trial, it must appear that all the constituent elements in the one were involved in the other and were directly and expressly adjudicated, and unless it be apparent that the defendant was previously tried for identically the same offense as the one for which he is charged, the plea of former adjudication or former jeopardy, will not be credited. *State v. Andrews*, 27 Mo. 267; *State ex rel. v. James*, 82 Mo. 509; R. S. 1889, sec. 3581; *State v. Samuels*, 25 Tex. App. 538; *State v. Ashton*, 31 Tex. Crim. Rep. 482; *State v. Reddick*, 31 Tex. Crim. Rep. 537; *State v. Winn*, 82 Wis. 574; *Comm. v. Roby*, 12 Pick. 496; *Cragie v. Hadley*, 99 N. Y. 131; *Bank v. Walker*, 130 U. S. 267; *Martin v. Webb*, 110 U. S. 7. (3) The court did not commit error in refusing to discharge upon his motion therefor. *State v. Billings*, 140 Mo. 194; *State v. Nugent*, 71 Mo. 147; *State v. Marshall*, 115 Mo. 383. (4) Woodward's evidence was admissible to show corruption, fraud and guilty knowledge. Being made in defendant's presence and in a conversation in which he was engaged, and not denied by him, he is burdened with the responsibility of whatever force or effect the jury, in connection with other testimony, might have seen proper to give it. (5) By instruc-

tion number 1 the jury were told what would constitute *prima facie* evidence of insolvency and guilty knowledge, following it up with a clear explanation of the term, and then instructed upon reasonable doubt. In addition to this the court gave instruction number 1, offered by defendant, which involved the same principle as contained in instruction number 7, offered and refused. *State v. Berkley*, 92 Mo. 53; *State v. Sattley*, 131 Mo. 491.

BURGESS, J.—Defendant was indicted in the criminal court of Greene county for receiving from Graham & Son, a firm doing business in the city of Springfield, a deposit of $260 in money, into the Bank of Commerce located in said county, of which he was at the time president, knowing at the time that the bank was insolvent or in failing circumstances.

The indictment is in two counts, in the first of which defendant is charged with having received the deposit as president of the bank, and in the second count with assenting thereto, knowing at the time that the bank was insolvent and in failing circumstances.

At the July term, 1896, of said court, on application of defendant the venue of said cause was changed to the circuit court of Jasper county.

After the case had been transferred to the Jasper county circuit court, and on the twelfth day of July, 1897, the defendant filed his plea in bar to the prosecution under the indictment herein, and asked to be discharged. The plea in bar was based upon the fact that defendant had, upon two separate occasions, prior to the finding of this indictment, been indicted, tried and acquitted upon a similar charge for receiving money on deposit in said bank while the same was in a failing condition, and that inasmuch as the crime of receiving money on deposit under circumstances such

State v. Burlingame.

as are found in this case was a continuing offense, his having been previously tried and acquitted worked a complete defense to any further prosecution.

The prosecuting attorney, on behalf of the State, filed a demurrer to the plea in bar, which was by the court sustained.   The defendant then filed a motion to be discharged upon the ground that more than three terms of court had passed upon which the case was continued and that said continuances were had at the instance of the State and not at the instance of the defendant.

There had been no continuance by the State of this case, but the continuances by the State relied upon by defendant as entitling him to his discharge were under other indictments for the same offense which had been *nolled* by the State.

This motion was overruled.

Before the case was submitted to the jury the State entered a *nolle prosequi* to the second count in the indictment.

Under the evidence and instructions, defendant was found guilty under the first count in the indictment and his punishment fixed at five years' imprisonment in the penitentiary.   He appeals.

The evidence showed that defendant was one of the original incorporators of the Bank of Commerce at Springfield, Missouri, which commenced business on the first day of October, 1890, and from the time of its organization was its president and one of its directors. That on the seventh day of July, 1893, he received on deposit in said bank from Graham & Son, a firm doing business in said city, the sum of $260, knowing at the time that the bank was insolvent and in failing circumstances.   That the bank closed its doors and ceased to do business on the eleventh day of July, 1893.

The court, at the request of the State, gave the following instructions, to wit:

"1. If you find from the evidence that the Bank of Commerce was a banking institution and that the defendant was its president; and if you further find from the evidence that said Bank of Commerce failed on the eleventh day of July, 1893, then such failure on the eleventh day of July, 1893, is *prima facie* evidence that said bank was insolvent and in failing circumstances on the sixth day of July, 1893, and also *prima facie* evidence that defendant, as its president, had knowledge at said dates that said bank was insolvent and in failing circumstances. *Prima facie* evidence of a fact is such as establishes the fact, and, unless rebutted or explained by the evidence, becomes conclusive, and is to be considered by you as fully proved. A bank is insolvent and in failing circumstances when it can not be reasonably expected to meet and pay in money the usual and ordinary demands that are reasonably liable to be made upon it, and this is so, notwithstanding you may believe from the evidence that the debtors of the bank had property sufficient to pay off the liabilities of said bank.

"2. If you find from the evidence that the Bank of Commerce was a banking institution, and that the defendant was its president, and that on the sixth day of July, 1893, said bank was insolvent and in failing circumstances, and that the defendant, at the county of Greene and State of Missouri, received $260 in money, or any other sum of money or deposit, the same being of the value of $30 or more, of the property of Graham & Son, a firm composed of F. P. Graham and Geo. H. Graham, and that the defendant at the time had knowledge that said bank was insolvent and in failing circumstances, then you should find the defendant guilty, as charged in the first count in the

indictment, and assess his punishment at imprisonment in the state penitentiary for a term of not less than two nor more than five years.

"3.   If you have a reasonable doubt as to the guilt of the defendant you will acquit him, but such a doubt, to authorize an acquittal on that ground alone, should be a substantial doubt arising from the testimony in the case, and not a mere possibility of the innocence of the defendant.

"4.   You are the sole judges of the credibility of the witnesses and the weight of their testimony, and in determining the credit of a witness and the weight to be given his testimony you may take into consideration his demeanor upon the witness stand, his bias or prejudice, if any, as shown by the evidence, his relation to the case or the parties, and his interest in the result of the trial.   All these things should be carefully considered by you, and if you believe from the testimony that any witness has willfully sworn falsely to any material fact, then you are at liberty to disregard the whole or any part of such witness' testimony.

"5.   Notwithstanding you may believe from the evidence that the debtors of the Bank of Commerce owed said bank an amount of money which, if it could have been collected, would have enabled the bank to keep running, yet if you further find from the testimony that said bank was insolvent or in failing circumstances at the time of the deposit of money mentioned in the indictment, and that defendant had knowledge of its condition, then it is your duty to convict the defendant.

"6.   You are instructed that the evidence bearing upon the financial standing of the officers of the Bank of Commerce, including the witness Gray, prior to July 11, 1893, is only admitted for the purpose of determining the effect such reputation had upon the

defendant in his business transactions with them for said bank; but if you find said parties were for a long period of time doing business with the said bank, making and renewing loans from time to time, and that the defendant had actual knowledge from such business relations as to their real worth, then you should take this fact into consideration with all the other facts in evidence.

"7.    You are instructed that what the defendant said against himself, if anything, in any conversation proved by the State, the law presumes to be true; but what he said for himself in any conversation proved by the State the jury are not bound to believe, but may believe or disbelieve it, as they may believe from all the facts and circumstances and evidence it is true or false.

"8.    The court instructs the jury that the testimony of witnesses showing other deposits received by T.E. Burlingame, the defendant, at the Bank of Commerce, in addition to the one described in the indictment is for the sole purpose of showing knowledge on the part of defendant that said bank was receiving deposits.

"9.    Under the laws of Missouri the defendant is a competent witness in his own behalf, but in determining the weight and credit you will give to his testimony, you may take into consideration the fact that he is the accused person on trial and interested in the result thereof."

To the giving of which instructions and each of them, numbered from one to nine, inclusive, the defendant then and there at the time the same were given objected and at the time excepted.

The court then, at the request of the defendant, gave the following instructions, to wit:

"1.   The court instructs the jury that in the first count of the indictment in this case, the defendant is charged to have been  president of the  Bank of Commerce, located in Springfield, Greene county, Missouri, and as such officer he received the money on deposit in said bank on or about the date named in said indictment with knowledge at the time he received said deposit that said bank was insolvent and in failing circumstances.  Now, then, before you can find the defendant guilty of this charge you must find and believe from the evidence in the case and beyond a reasonable doubt that the State has established the truth of the following propositions:

"*First.*   That at the time named in the indictment the defendant was the president of the Bank of Commerce and received the money from the party named in the indictment, as a deposit.

"*Second.*   That at the date of the reception of such deposit, the bank was, as a matter of fact, insolvent and in failing circumstances.

"*Third.*   That at the time the money was received by the defendant from the party named in the indictment, as deposit, the defendant had knowledge at the time that said bank was insolvent and in failing circumstances.

"And unless all the foregoing propositions have been established to your entire satisfation and beyond a reasonable doubt, your verdict must be for the defendant, acquitting him of the crime charged; and you are further instructed that it is not enough that the evidence in the case goes to show his guilt, but such evidence must be entirely inconsistent with a reasonable supposition of his innocence.   Suspicions, however strong, or probabilities, however great, will not be sufficient to justify a conviction, but the evidence, to justify a conviction, must be positive, convincing,

establishing the defendant guilty of the charge contained in the indictment beyond a reasonable doubt, and unless the evidence so convinces you, a verdict of not guilty must be returned.

"2.    The law of this State does not require a bank to retain on hand all the money of its depositors.

"3.    A bank is insolvent or in failing circumstances when, from any cause, it is unable to pay its debts in the ordinary or usual course of business.    It is not expected to be able at once to pay every debt it owes, but it must be able to pay or provide for its debts as they fall due in the usual course of business.    'Insolvency' or a 'failing condition' in the ordinary acceptation of the term, when applied to a bank, means inability to meet liabilities in the usual course of business.

"4.    You are instructed that in determining the guilt or innocence of the defendant on this charge you will take into consideration his good character, if any has been shown, along with the other evidence in the case.

"5.    Although in weighing the testimony of the defendant you should take into consideration the fact that he is the defendant on trial and testifying in his own behalf, yet you should not reject his testimony because he is the defendant testifying in his own behalf; but you should weigh his testimony by the same rules of evidence that you apply in weighing the testimony of every other witness and give it such weight as it should be entitled to under all the facts and circumstances in evidence in the case."

These were all the instructions given in the case.

The defendant also at the time requested the court to give the following instructions, to wit:

"6. You are instructed that although you may believe from the evidence in this cause that the defendant

was the president of the Bank of Commerce, and as such actually received the deposit as is charged in the indictment, and that at the time he received said deposit said bank was actually insolvent, yet, notwithstanding this, if you further find and believe from the evidence in the case that the defendant at the time he received said deposit into said bank had good reason to believe and did believe that said bank had and held sufficient solvent paper and securities with which to pay all its indebtedness, then your verdict must be for the defendant.

"7. You are instructed that the presumption of innocence with which the defendant is surrounded by the law surrounds and protects him in this case, notwithstanding the fact that the State may have established a *prima facie* case as defined in the instructions heretofore given you, and the burden remains with the State continuously in this cause, and it devolves upon the State to establish defendant's guilt beyond a reasonable doubt, notwithstanding such *prima facie* case. So if the defendant has introduced sufficient evidence to create in your minds a reasonable doubt as to his guilt, you should acquit him of the charge preferred by the indictment.

"8. You are instructed that in determining the issues involved in this case you may take into consideration the general financial condition of the country in general at the time of the failure of the Bank of Commerce, and if you find and believe from the evidence that a panic was in progress at that time, or a general condition of financial depression and uneasiness had overtaken the country, or that the supply of money was becoming very limited, or was insufficient to meet the demands made for it by the community in the ordinary course of business, then any or all of these facts and circumstances may be considered and weighed together

with other facts or circumstances in the case in determining the guilt or innocence of the defendant.''

Which instructions of the defendant, numbered 6, 7 and 8, the court refused to give, to which refusal the defendant then and there at the time objected and excepted.

The first point for consideration raised upon this appeal is with respect to the action of the trial court in sustaining the State's demurrer to defendant's plea in bar to this prosecution.

It is claimed by defendant that the issue raised by the plea in bar is of a two-fold character. That the first count is in abatement that the defendant has been formally acquitted of substantially the same offense as the one pleaded and charged against him in the present indictment, thus invoking the protection of the doctrine of *res judicata*, growing out of a former verdict and judgment of acquittal for the same offense.

That in the second count of the plea defendant alleges that an essential ingredient of the crime charged against him in the present indictment had been adjudicated and determined in his favor in two former trials, wherein the State of Missouri was plaintiff and he was defendant. That by the demurrer to the plea all material allegations in the plea stand admitted, and this being so, the plea was a complete bar to this prosecution.

I.    It is manifest from the plea in bar that the offense with which defendant is charged in the case in hand, is not the same offense of which he was acquitted on either of the former trials as alleged in the plea. He was not charged in either of the indictments in those cases with receiving money on deposit from Graham & Son, but was charged with receiving money on deposit from other persons than Graham & Son. The offenses were entirely different.

It is true that the offense charged in those indictments, and the one in this case have some of the same constituent elements, that is, it is the same bank and banker, the same condition of insolvency, and the same knowledge of insolvency, but neither one of them nor all of them constitute a crime, but when in addition thereto, with knowledge of such facts a president or other officer of a bank, receives money on deposit, then he is guilty of larceny under the statute.  The receiving of money on deposit by an officer of an insolvent bank, or one in failing circumstances from one particular person or firm is not, we think, a continuous offense, and is not a bar to a prosecution for receiving money thereafter on deposit from another and different individual, at a different time, but are separate and distinct offenses.  The one has no interest in common with the other, and the proof to this extent must of necessity be entirely different. It could with the same propriety be said that an officer who receives illegal fees from different persons at different times is guilty of but one offense, a doctrine that no lawyer would approve.  The offense was not, we think, a continuing one, but each receipt of moneys on deposit under the circumstances prohibited by statute was a separate and distinct offense.

The demurrer was properly sustained.

II.   Defendant next insists that the court erred in overruling his motion for discharge.

In support of this motion he offered to prove: That on the fifth day of April, 1894, the defendant was by a good and valid indictment, based upon the same deposit he is alleged to have received in this case, and returned to the March term, 1894, of the criminal court of Greene county, Missouri, charged with the commission of the same offense as is charged in the present indictment.  That at the July term,

1894, of said court, the defendant filed his application in proper form for a change of venue from Greene county, in which application it was alleged that the defendant could not have a fair and impartial trial in said county, on account of the bias and prejudice of the inhabitants of said county against him. That said application coming on to be heard at the July term, 1894, of said court, the same was by the court sustained and a change of venue awarded to Taney county, Missouri. That at the October term of the circuit court of Taney county, Missouri, the same being the next ensuing term of the circuit court of that county, the State of Missouri, through her prosecuting attorney, entered a *nolle prosequi* in said cause. That on the eighth day of December, 1894, and at the November term of the criminal court of Greene county, Missouri, the defendant was, by a good and valid indictment based upon the same deposit alleged to have been received in this case and returned to the November term, 1894, of said criminal court, again charged with the commission of the same offense as is charged in the present indictment. That at the March term, 1895, of the criminal court of Greene county, the defendant filed his application in proper form for a change of venue from said county, in which application it was alleged that the defendant could not have a fair and impartial trial in said county, on account of the bias and prejudice of its inhabitants against him. That said application, coming on to be heard at the March term of the criminal court of Greene county, and on the twenty-sixth day of March, 1895, the same was by the court sustained and the venue of said cause was changed to Lawrence county, Missouri; and that at the February term, 1895, of the circuit court of Lawrence county, the State of Missouri, through her prosecuting attorney, entered a *nolle prosequi* in said

cause. That on the eighteenth day of December, 1895, and at the November term, 1895, of the circuit court of Greene county, and during the pendency of the indictment last mentioned and described in the circuit court of Lawrence county, the present indictment was returned by the grand jury of Greene county into the criminal court of said county. That under the said indictment returned into the criminal court of Greene county on the eighth day of December, 1894, the defendant was taken into custody and confined in jail from the twenty-first day of January, 1895, until the fourth day of September, 1895. That none of the delays in the trial of said cause while the same was pending under the former indictments happened on his application, except one continuance on defendant's application at the March term, 1896, of the criminal court of Greene county, and one continuance by agreement at Jasper county, which was occasioned by the want of time to try said cause, and that the State of Missouri could have secured a fair and impartial trial of said cause in Taney or Lawrence counties at any time while said indictments were pending respectively in said counties of Taney and Lawrence.

The proffered evidence was excluded on objection by the State.

Section 4222, Revised Statutes 1889, provides that if any person indicted for any offense and committed to prison shall 'not be brought to trial before the end of the second term of the court having jurisdiction of the offense which shall be held after such indictment found, he shall be entitled to be discharged, unless the delay shall happen on the application of the prisoner, or shall be occasioned by the want of time to try the cause at such second term. It is not claimed that the defendant was entitled to his discharge under the statute unless two or more terms of court having

jurisdiction of the offense held after the indictments were found, including the indictment under which the conviction was had, elapsed without defendant's fault before he was brought to trial, but it is earnestly insisted that, notwithstanding there were three indictments, two of which had been *nolled* by the State and were not pending at the time of the trial, and as they were all with respect to the same offense, the continuances of the cases *nolled* were the same as if they had been made under the last indictment and entitled defendant to be discharged.

The State had the right to file one or more new indictments for the offense charged against defendant and the statute declares that the one first found shall be deemed suspended by the second, and shall be quashed. R. S. 1889, sec. 4102.

The finding of the last indictment was to all intents and purposes the presentation of a new case against defendant (*State v. Billings*, 140 Mo. 193), and under the statute there must have been two continuances of the case by the State under this indictment to have entitled defendant to be discharged.

III.   During the trial one R. B. Woodward, a witness for the State, testified that he was one of the bank's depositors and that some time after its doors were closed, he had a conversation with defendant in the presence of his wife, Mrs. Burlingame, in regard to the settlement of his claim, in which defendant said, "I would pay you if I had the money," to which the witness replied, "If you give me your own and your wife's note you can have this thing," and then over the objection of defendant stated that "Mrs. Burlingame spoke up and says, 'Mr. Parce got half the benefit of this failure, and he ought to put up something. As quick as we can see him we will settle the matter with you.' As quick as they could see him and adjust the

matter with him they would settle the matter with me; that was her words."

Parce was one of the stockholders of the bank, and he and defendant had jointly borrowed large sums of money therefrom, and were largely indebted to it at the time of its failure, and it is argued by defendant that these statements by his wife were prejudicial to him and improperly admitted.

It is well settled that the statements or declarations made by a husband or wife in the presence of the other can not be used against the one whose interest may be affected thereby, unless made with respect to some matter in which the one making them has been the agent of the other. 1 Greenleaf on Evidence [14 Ed.], sec. 185; *Hoffmann v. Hoffmann's Executor*, 126 Mo. 486.

Such declarations are subject to the same rules of exclusion which govern their testimony as witnesses (1 Greenleaf on Evidence [14 Ed.], sec. 341), and the wife can not be a witness against the husband in prosecutions of this character without his consent. *State v. Willis*, 119 Mo. 485.

The statement by Mrs. Burlingame that Parce got half of the benefit of the failure of the bank, that he ought to put up something, and that as soon as they could see him and adjust the matter with him they would settle the matter with the witness, was an implied admission at least, that defendant and Parce had wrecked the bank by making large loans to themselves for their individual benefit and profit, and was most certainly prejudicial to defendant.

IV.    There was no error in admitting in evidence the certificate of incorporation of the "Bank of Commerce, Springfield, Mo." There was no variance between the name of the bank as set forth in the indictment and in the certificate of incorporation. The

words, "Springfield, Mo.," after the words "Bank of Commerce," in the certificate were no part of the name of the bank, but merely its place of location.

V. The State over the objections of defendant, read in evidence several deeds of conveyance, purporting to have been made by Parce, Gray and Mrs. Phoebe Gray to other parties on July 11, 1893. They had no tendency whatever to establish any issue involved in this case, nor had the defendant in so far as disclosed by the record, anything to do with him, nor was he interested in any way in them. They were therefore improperly admitted in evidence against him. Moreover, the copies were not in any event the best evidence, and should not have been read in evidence without it first being shown to the court by the oath or affidavit of the prosecuting attorney, or of some other person knowing the fact, that the deeds were lost, or not within the power of the representatives of the State to produce the same. R. S. 1889, sec. 2428.

VI. The court over the objection of defendant permitted Mrs. Horton and Mrs. Dickinson, who were witnesses for the State, to testify to deposits made by them in the Bank of Commerce in February, 1893, five months before the time the deposit was made by Graham & Son, and in this it is insisted that error was also committed. It is clear we think that each deposit, if received under circumstances prohibited by statute, was a separate and distinct offense and this being so the evidence was inadmissible. It was not permissible for the purpose of showing guilty knowledge upon the part of the defendant, because different crimes, provided the bank was insolvent or in failing circumstances at the time and defendant knew it, and the evidence did not tend to show these facts. Besides the evidence was positive that defendant received the deposit described in the indictment in person, and with

respect thereto no additional proof of guilty knowledge was necessary.

VII.   It is also insisted that the court erred in excluding evidence offered by defendant as to the effect of the panic prior to the failure of the bank, resulting in business disaster and bank failures in the city of Springfield, immediately following the eleventh of July, 1893, the day upon which defendant's bank was forced to suspend.   It is impossible to conceive how defendant could have been prejudiced by this ruling. The deposit by Graham & Son was made on July 6, 1893, and so recently before the bank's failure that the evidence would have rather tended to show than otherwise that the bank was insolvent or in failing circumstances at that time, and the fact that such failure was produced by a financial panic was no justification or excuse for the receipt by defendant as its president of moneys upon deposit, knowing that the bank was in failing circumstances or insolvent.   If, however, the failure of the Bank of Commerce was produced by the failure of some of its correspondents and defendant had no notice of such failure at the time he received the deposit from Graham & Son, then such evidence would of course be admissible.   But there is no claim of that kind in this case.

VIII.   The action of the court in giving the first instruction on the part of the State, and in refusing the seventh instruction asked by defendant is criticised upon the ground that the statute, making the failure of a bank *prima facie* evidence that it was in failing circumstances at the time of the reception of the deposit in question, and that the person receiving the deposit had knowledge of such fact, can only be justified upon the theory presented by said refused instruction, that is, that the *prima facie* case made by proof of the deposit and the insolvency of the bank was not sufficient

to convict.   But when the State's first instruction is read in connection with the first instruction given at the instance of defendant, there is no room for such contention, as by it the jury are required "before they can find the defendant guilty of the crime charged against him to believe from the evidence in the case and beyond reasonable doubt that the State has established the truth of the following propositions:   *First.*   That at the time named in the indictment the defendant was the president of the Bank of Commerce, and received the money from the party named in the bank as a deposit.   *Second.*   That at the date of the reception of such deposit the bank was, as a matter of fact, insolvent and in failing circumstances.   *Third.*   That at the time the money was received by the defendant from the party named in the indictment, as a deposit, the defendant had knowledge at the time that said bank was insolvent and in failing circumstances.   And unless all the foregoing propositions have been established to your entire satisfaction and beyond a reasonable doubt, your verdict must be for the defendant, acquitting him of the offense charged.   And you are further instructed that it is not enough that the evidence in the case goes to show his guilt, but such evidence must be entirely inconsistent with a reasonable supposition of his innocence.   Suspicions, however strong, or probabilities, however great, will not be sufficient to justify a conviction, but the evidence, to justify a conviction, must be positive, convincing, establishing the defendant guilty of the charge contained in the indictment beyond a reasonable doubt, and unless the evidence so convinces you a verdict of not guilty must be returned."

It will thus be seen that the jury were told that in order to a conviction of defendant, the constituent elements of the crime charged against him must be

proven beyond a reasonable doubt, but this fact was emphasized by being repeated at least three times in defendant's instruction, and he has no ground whatever to complain of the action of the court on this score. When an instruction is given which presents the same question presented by another instruction asked by the same party, there is no error in refusing the latter.

IX. There was no error in giving instructions on the part of the State with the exception of the eighth and this should have been refused for the same reason heretofore given why the evidence mentioned in said instruction should have been excluded. Nor was there error in refusing instructions prayed for by defendant.

X. While in the argument by counsel before a jury, and especially in a criminal case, they should keep in the record and should not be permitted to comment on matters calculated to prejudice the defendant not shown by the evidence, there was nothing in the remarks of counsel for the State in this case which would justify a reversal upon that ground. But for errors in admitting improper evidence the judgment is reversed and the cause remanded.

GANTT, P. J., and SHERWOOD, J., concur.