STATE of Missouri,
Plaintiff-Respondent,

v.

Marvin ALLEN, Defendant-Appellant.

No. 43617.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 28, 1982.

Rehearing Denied Oct. 15, 1982.

Murray A. Marks, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction of three counts of robbery and one count of attempted robbery and the resultant sentences aggregating thirty-five years, ordered to run so as to impose a total imprisonment of twenty years. We reverse and remand.

At approximately 11:30 p.m. on July 2, 1979, Larry King, either by stealing or robbery, obtained an automobile from Rose Luss. Shortly thereafter King saw defendant and advised him that he had gotten the car by "tricking" the woman out of it. He further advised defendant that he was "fixing to go make some money," with the car. King had been drinking and defendant stated that he (defendant) would go along and drive. Defendant, a St. Louis City police officer, carried his service revolver with him in a brown paper bag which he placed on the seat. Initially the duo stopped at a liquor store to make a purchase. King then directed defendant to drive down Cass Avenue in St. Louis until they reached the intersection of Cass and Jefferson, where King directed defendant to park. King told defendant he was going to "rip off" some people who had just driven up to a hotel at that location. Defendant told King to be careful. King exited the car with defendant's service revolver, held up the driver and passenger of the other car, took money from them, reentered the Luss automobile and said "Let's go." Defendant then drove to a restaurant where King, again with defendant's gun, exited the car to "rip off" some people. King robbed one person at that location and as he was returning to the car was shot at. Defendant told King to "get down" and drove south on Jefferson Avenue to Delmar. King saw a man riding a bicycle and told defendant to stop the car because King had to have the bicycle since his had been taken earlier in the day. Defendant cut in front of the rider and stopped the car. King exited the car, approached the bike rider with defendant's gun, and fired one shot at the rider. King had selected the wrong victim, John Rice, a policeman returning home from his shift, who promptly drew his service revolver and fired six shots at King, hitting him three times. After the shooting defendant got out of the car, looked at Rice for one or two seconds, quickly reentered the vehicle, drove a short distance, again exited the vehicle and fled the scene on foot. Rice testified that he looked at defendant, realized his own gun was empty, retrieved the gun King had fired, and fired several shots at the Luss automobile. Rice made a positive identification of defendant at a lineup on July 12 and at the trial.

The evidence regarding the discussions and actions between King and defendant came from King, who survived Rice's fusillade, and testified pursuant to a plea bargaining agreement. Defendant admitted his presence in the car throughout King's criminal activities, but denied being aware of King's actions and could offer no explanation of how King obtained and used defendant's revolver without defendant's knowledge.

Defendant's meritorious point is that the court erred in striking a portion of the testimony of one police officer and all of the testimony of another relating to defendant's character. Both officers testified

to their familiarity with the general reputation of the defendant among the police officers with whom he associates and that he had a good reputation for honesty and veracity. Neither officer on cross-examination was able to recount specific instances where defendant's reputation was discussed or remember specific instances where they had asked about defendant's reputation. On the basis of those answers to cross-examination the trial court struck the testimony. The court erred. The witnesses had testified sufficiently to their contacts with policemen who associated and worked with defendant and who generally discussed other officers. Their testimony that they had not heard adverse things about defendant prior to these crimes clearly made their testimony of defendant's character admissible. Courts have recognized that negative evidence is cogent to establish a person's good character on the basis that in the absence of any discussion about character it may reasonably be presumed that the person's reputation is good. *State v. Huffman,* 607 S.W.2d 702 (Mo.App.1980) [2–5]; *State v. Grate,* 68 Mo. 22 (1878) [4], *overruled on other grounds, Roe v. Bank of Versailles,* 167 Mo. 406, 67 S.W. 303 (1902).

 The state makes no argument that the ruling was not prejudicial. The defendant's right to summon witnesses on his behalf is constitutionally protected. Mo. Const. Art. I, Sec. 18(a). A necessary corollary to that right is that the defendant also is entitled to have the jury consider the relevant testimony of his witnesses. Evidence of good reputation is relevant to show the "improbability of [defendant] committing the crime charged and in substantive proof of his innocence." *State v. Demaree,* 362 S.W.2d 500 (Mo. banc 1962) [9, 10]. The jury was denied the opportunity to consider defendant's evidence of good reputation because of the court's erroneous ruling. The judgment must be reversed and the cause remanded.

We will also discuss contentions of defendant which are likely to occur on retrial or which would compel outright reversal without remand.

Defendant challenges the trial court's failure to sustain his motion to sever the counts. The original indictment contained seven counts. These included the taking of the Luss automobile by force, the robbery of the two persons at the hotel, the robbery at the restaurant, attempted robbery of two other persons at the restaurant ten minutes after the prior robbery at the restaurant, and the attempted robbery of Rice. The Luss crime was alleged to have occurred at 11:10 p.m. July 2, and the remaining six charges were alleged to have occurred between 1:00 a.m. and 1:15 a.m. on July 3. Each count of the indictment charged that Marvin Allen and Larry King acted together in committing the alleged crimes. All of the charges, except one attempt at the restaurant, alleged that the defendant utilized the Luss car to escape. All of the charges, except the Luss charge, identified the address of the particular crime, all of which were in close proximity. There was no specific allegation of common scheme or plan. Prior to the trial the state *nolle prossed* the Luss charge and the two attempts at the restaurant, in effect severing them from the other charges. We need not, therefore, consider those charges in determining defendant's contention of prejudicial error in failing to grant the motion to sever.

 Rule 24.04(b) in effect at the time of defendant's indictment (now Rule 23.05) provided that "all offenses which are based on the same act or on two or more acts which are part of the same transaction or on two or more acts or transactions which constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts...." It is not clear in this state whether the indictment must show on its face grounds for the joinder or whether the joinder issue may be determined on the basis of evidence adduced in the case. *See State v. Prier,* 561 S.W.2d 437 (Mo.App. 1978) [2]; *State v. Jackson,* 566 S.W.2d 227 (Mo.App.1978); *Griffin v. United States,*

272 F.2d 801 (5th Cir.1960) [1].[1] Certain practical difficulties confront trial courts ruling on motions to sever prior to trial which may justify a practice at that level of requiring that the ground for joinder appear on the face of the indictment. On appeal, however, our inquiry is whether in fact defendant was tried on improperly joined charges and that determination can and should be made on the basis of the evidence adduced. We can see nothing to be gained by reversing and remanding a case, where joinder is clearly permissible under the evidence and can be effectuated on retrial, because the indictment was deficient in alleging grounds for joinder. Nor could we affirm a conviction where the indictment properly alleged grounds for joinder and the evidence failed to establish those grounds.[2] While we are inclined to view the indictment here as sufficient to establish that joinder was proper, any doubts are resolved when the evidence at trial is considered.

Here the evidence was sufficient to establish a common scheme or plan in the criminal activities of King and defendant encompassed by the counts on which defendant was tried. King's expressed intention at the time he and defendant originally drove off in the Luss car (approximately 12 midnight) was "to go make some money." This was a general, albeit vague, expression of an overall intent to engage in the series of crimes which resulted. The crimes occurred in close proximity in both time and place and involved the same method of operation and a repeated course of conduct by King and by defendant. While the victims can be characterized as targets of opportunity, the robbery of targets of opportunity was the intention of King and defendant when they began their criminal activities. Unlike the cases cited by defendant,[3] here

there is evidence that King and defendant set out on a "preconceived and deliberate criminal foray." *State v. Buxton,* 324 Mo. 78, 22 S.W.2d 635, 637 (1929). And see *State v. Johnson,* 505 S.W.2d 11 (Mo.App. 1974); *State v. Decker,* 591 S.W.2d 7 (Mo. App.1979). We therefore find a sufficient basis for joinder of the offenses.

■ We also find no abuse of the trial court's discretion to sever counts properly joined where prejudice to the defendant's rights may result. The standards for exercise of that discretion are set forth in *State v. Duren,* 556 S.W.2d 11 (Mo. banc 1977) [13] *rev'd on other grounds,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579. We do not find the number of charges excessive nor are the facts particularly complicated nor is there any basis to believe that a reasonably intelligent jury would have any difficulty in distinguishing the evidence and applying the law to each offense. Further, the predominant reason for severing counts is to avoid prejudice to the defendant by allowing evidence of additional crimes. *State v. Buford,* 582 S.W.2d 298 (Mo.App.1979) [3]. In this case, however, the evidence of the other crimes would have been admissible to establish defendant's intent. Defendant did not actually commit the robberies. His guilt of the crimes is based upon his assistance and aid to King. His defense was his lack of knowledge of what King was doing —i.e., defendant's absence of intent to aid in the robberies. In that posture the fact of these recurring crimes in a short period of time utilizing defendant's gun with defendant serving as driver of the vehicle in which King was based was relevant to defendant's knowledge of King's activities. *See State v. Cummins,* 279 Mo. 192, 213 S.W. 969 (Mo.1919) [1].

1. In *State v. Johnson,* 505 S.W.2d 11, 12 (Mo. App.1974) we pointed out that because of the similarity between Rule 24.04(b) and Federal Rule of Criminal Procedure 8(a), judicial interpretations of the federal rule are persuasive.

2. The trial court bears a continuing duty throughout trial to sever the charges if it appears that prejudice to the defendant is resulting from such joinder. *State v. Duren,* 556

S.W.2d 11 (Mo. banc 1977) [13] *rev'd on other grounds,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579.

3. *State v. Buford,* 582 S.W.2d 298 (Mo.App. 1979); *State v. Howard,* 601 S.W.2d 308 (Mo. App.1980); *State v. Wood,* 613 S.W.2d 898 (Mo.App.1981).

■ Defendant next objects to the failure of the trial court to grant his pretrial motion to dismiss because of delay between arraignment and trial. His initial contention is that the delay in his trial violated Sec. 545.780 RSMo 1978. Defendant bases this contention upon his initial arraignment on three counts in July 1979. However, those charges were *nolle prossed* and defendant was subsequently indicted on the present charges and arraigned in January 1980.[4] While argument can be made for beginning the statutory 180 days at the time of the first arraignment, the case law of Missouri, under earlier statutes requiring trial within certain time limits (Sec. 545.-890–545.920 RSMo 1969), has excluded the time between the first indictment and the arraignment on the final charges. *State v. Morton,* 444 S.W.2d 420 (Mo.1969) [7–8]; *State v. Wigger,* 196 Mo. 90, 93 S.W. 390 (1906) [1]; *State v. Burlingame,* 146 Mo. 207, 48 S.W. 72 (1898) [2]. Defendant's motion to dismiss for violation of the statute was filed in May 1980, long before 180 days after defendant's arraignment, and no error occurred in denying it. In addition, some delays which carried the trial beyond the 180 day period were properly excludable as periods when pretrial motions were pending or under advisement. Several continuances were granted at the request of the defendant. Defendant has not carried his burden of proof to establish that the delay was "occasioned by the state." Sec. 545.-780.5, RSMo 1978; *State v. Franco,* 625 S.W.2d 596 (Mo.1981) [2].

Defendant also contends the delay violated his Sixth Amendment rights to speedy trial and his Fifth Amendment rights to due process. The speedy trial determination also requires utilization of the time between final indictment and trial. *United States v. MacDonald,* —— U.S. ——, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). Examining the time involved and the factors set forth in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) and *State v. Black,* 587 S.W.2d 865 (Mo. App.1979), we find no violation of defend-

ant's right to speedy trial. Nor do we find that defendant established the more stringent requirements of proof necessary to show a violation of due process rights—i.e., denial of a fair trial. *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971).

■ Defendant also attacks the trial court's failure to exclude Rice's in-court identification of defendant. We have examined the factors set forth in *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972) to determine reliability of the in-court identification. The observation was brief (2 seconds) but was made in good artificial light, at fairly close range, under circumstances evidencing a high level of concentration, by a police officer who is trained to be observant. The officer demonstrated a high level of certainty of his identification at a lineup eight days after the confrontation and at the trial. We find no unreliability in the identification.

Judgment reversed and the cause is remanded for new trial.

PUDLOWSKI and SATZ, JJ., concur.

---

4. There had been an interim indictment, arraignment and *nolle pros* occurring between July and January, but the record does not reflect the date.