**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Larry SOUTHERN,
Defendant-Appellant.**

**No. 51348.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 23, 1986.

Motion for Rehearing and/or
Transfer Denied
Jan. 27, 1987.

Application to Transfer Denied
March 17, 1987.

Deborah Stockhausen, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant appeals after being convicted by a jury of one count of stealing an automobile, five counts of first degree robbery, four counts of armed criminal action, and one count of first degree burglary. He was sentenced to a total term of sixty years' imprisonment.[1] We affirm.

We briefly set forth the pertinent facts, gleaned from consideration of the evidence in the light most favorable to the jury verdict. On November 16, 1984, at approximately 6:00 p.m., Judy Brame parked her blue 1978 Oldsmobile Cutlass on the St. Francis DeSales Church parking lot in the City of St. Louis. At 7:45 p.m. she discovered her car was missing and reported the theft to the police.

The stolen automobile was seen later that night on the Schnucks grocery store parking lot at 8960 Jennings Station Road, which is located in St. Louis County, ⅜ of a mile outside the City of St. Louis. At approximately 8:30 p.m., Cretia Harden arrived at the Schnucks store and was approached by two men, one of whom she identified as defendant. Defendant displayed a gun and instructed Harden to accompany the men back to "their" car, which she identified as the vehicle represented in a photograph of the Brame automobile. Harden was told by defendant to get into the car, and was seated between defendant, who was in the driver's seat, and the other man. Her money and her gold chain were taken from her. Defendant then got out of the car, saying, "I'm going to rob these older people" who were leaving the Schnucks store. Harden saw the defendant approach the two people he had referred to, taking his gun with him,

---

1. Defendant was charged in Count I with stealing an automobile; in Counts II, III, V, VI, and VII with robbery in the first degree; in Count IV with burglary in the first degree; and in Counts VIII, IX, X, and XI with armed criminal action. The jury convicted defendant on all eleven counts. The jury assessed punishment and appellant was sentenced as follows: Count I, five years; Counts III and IX, fifteen years and Count IV, ten years, said sentences in Counts III, IV and IX to be served concurrently with each other and consecutive to all other counts; Counts V and X, ten years, to be served concurrently with each other and consecutive to all other counts; Counts VI and XI, twenty years and Count VII, ten years, said sentences to be served concurrently with each other and consecutive to all other counts. The total sentence imposed, therefore, was sixty years.

and she saw him return approximately five minutes later with a briefcase. While she was in the car she noticed a large scar on the neck of the man she identified as defendant. Defendant conceded he had such a scar.

Arthur Trampe, who is 61 years old, testified that he went shopping at the Schnucks grocery store on Jennings Station Road with his 90–year-old mother on the night of November 16, 1984. When Trampe returned to his car with the groceries he had purchased, he opened the door for his mother, who sat down and put her purse in her lap. Trampe then opened the trunk and began to load the groceries into the car; however, he was interrupted by a man who stuck a gun in his face. The man demanded Trampe's money and his watch, and when Trampe failed to comply he was struck in the back of the head and lost consciousness. When he regained consciousness his money clip, his briefcase and his mother's purse were missing.

At approximately 8:50 that same evening, Alice P. Pollard and her daughter, Alice F. Pollard, returned home to 4621 Shirley Place in the City of St. Louis after grocery shopping. Both women carried some groceries into the house, then the daughter went back outside to get the rest of the groceries. She noticed a blue Oldsmobile, which she identified as the car represented in a photograph of the Brame vehicle, pull into an alley, turn around quickly, and approach her mother's house. A man she identified as defendant "jumped out of the car" from the passenger's side with a gun and said, "This is a stick up." She informed defendant that her purse was inside the house and told him she would instruct her mother to "throw my purse out." She then began calling to her mother. When her mother approached the door the driver of the car got out, put on a ski mask and ran to the door of the house. Her mother testified that although she attempted to lock the door, the man in the mask was able to kick it in. He entered, struck her on the face, and took both women's purses. He, too, had a gun.

The Brame automobile was recovered four days later after being abandoned on a street in the City of St. Louis. A window was broken, as was the steering column. Papers were strewn about the car, which also contained two purses and a briefcase. The purses belonged to the Pollards and the briefcase to Mr. Trampe.

Defendant was indicted in the City of St. Louis on fourteen counts; including six counts of robbery, first degree, five counts of armed criminal action, one count of stealing a motor vehicle, one count of burglary, first degree, and one count of second degree murder. Defendant filed a motion to sever the offenses which was denied; however, upon the state's motion the murder count, as well as the related robbery count and armed criminal action count, were severed. Trial proceeded on the remaining eleven counts.

Defendant's principal point on appeal is that the trial court erred in overruling defendant's motion to sever offenses because joinder was improper under Rule 23.05.[2] In determining whether defendant was tried on improperly joined charges we consider only the evidence adduced by the

**2.** As was observed in *State v. Smith,* 682 S.W.2d 861, 863 (Mo.App.1984):

There is a distinction between proper joinder of charges under Rule 23.05 and severance of offenses at trial under Rule 24.07. The distinction was noted by our Supreme Court in *State v. McCrary,* 621 S.W.2d 266, 271 n. 7 (Mo. banc 1981), where the court said "[t]he joinder of offenses rule deals with the more basic question of what crimes can be charged in a proceeding." Severance presupposes proper joinder and is addressed to the discretion of the trial court with regard to whether prejudice may or would result if charges properly joined were tried together.

Both defendant's pre-trial motion and his point on appeal are directed at misjoinder under Rule 23.05. However, we find no abuse of discretion on the part of the trial court in failing to sever the offenses, having examined the factors to be considered according to *State v. Duren,* 556 S.W.2d 11 (Mo. banc 1977), *rev'd on other grounds sub nom. Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Under the circumstances of this case, it appears that the evidence of "other crimes" would have been admissible had each offense been tried separately.

state. *State v. Smith,* 682 S.W.2d 861, 863 (Mo.App.1984). Furthermore, "[l]iberal joinder of criminal charges is favored in order to achieve judicial economy." *Id.*

Rule 23.05 provides:

All offenses that are based on the same act or on two or more acts that are part of the same transaction or on two or more acts or transactions that constitute parts of a *common scheme or plan* may be charged in the same indictment or information in separate counts.

(Emphasis ours.) The supreme court in *State v. McCrary,* 621 S.W.2d 266 (Mo. banc 1981), examining the issue for the first time, held that the essential test in determining whether a common scheme or plan exists under Rule 23.05 "is the requirement that all the offenses charged must be '*products* of a single or continuing motive.'" *Id.* at 271.

Subsequent cases have further analyzed the meaning of "common scheme or plan" under Rule 23.05. Particularly pertinent to the case at bar are *State v. Foerstel,* 674 S.W.2d 583 (Mo.App.1984); and *State v. Allen,* 641 S.W.2d 471 (Mo.App.1982).

In *Foerstel,* the western district was confronted with the question of whether various counts stemming from the defendant's escape from a minimum security facility and his subsequent crime spree, which included automobile theft, rape, burglary and kidnapping, were properly joined. After a detailed analysis of the case law the court held:

The offenses in the case at bar point to acts constituting parts of a common scheme or plan. Rule 23.05. Appellant's escape, burglary, the kidnappings and theft carried out his intent to stay at large outside prison walls. The three rapes committed in the 24 hours spent outside the Church Farm were incidental to and part of his plan as espoused to the guard that he had been without a woman for eight years and wasn't going to pass up any sexual activity. Add to the claim of depression and frustration over being denied his second furlough request and it can be concluded *the rapes and all other offenses were committed in a continu-*

*ous flow of events* evidencing a common scheme or plan. It is not felt the rapes are so attenuated as to comprise offenses not properly joined as part of this scheme or plan from the rest of the offenses. *The rapes were products of appellant's continuing dual motive to engage in as much sexual activity as possible outside of confinement and to effect his permanent escape.* Joinder of the nine offenses was here proper. Rule 23.05.

674 S.W.2d at 589–590. (Citations omitted.) (Emphasis ours.)

The *Allen* case presents a situation closely analogous to the one at bar. There defendant's accomplice stole an automobile at 11:30 p.m., and the two men proceeded to commit six robberies between 1:00 and 1:15 that night, utilizing the stolen vehicle to escape. We held:

The crimes occurred in close proximity in both time and place and involved the same method of operation and a repeated course of conduct by King and by defendant. *While the victims can be characterized as targets of opportunity, the robbery of targets of opportunity was the intention of King and defendant when they began their criminal activities.* Unlike the cases cited by defendant, [*State v. Buford,* 582 S.W.2d 298 (Mo.App.1979); *State v. Howard,* 601 S.W.2d 308 (Mo.App.1980); and *State v. Wood,* 613 S.W.2d 898 (Mo.App.1981)] here there is evidence that King and defendant set out on a "preconceived and deliberate criminal foray." We therefore find a sufficient basis for joinder of the offenses.

641 S.W.2d at 474. (Citations omitted.) (Emphasis ours.)

The crimes in the instant case were also closely related in both time and place, and were committed in a "continuous flow of events." The victims here could likewise be characterized as "targets of opportunity," and there was evidence supporting an inference that defendant intended to rob such "targets" when he stole the automobile. Indeed, under the circumstances here, it is reasonable to infer that defend-

ant stole the Brames' car to facilitate the commission of the other offenses and then abandoned it. The counts were properly joined under Rule 23.05.

■ Defendant next posits error in the trial court's refusal of his requested instruction on circumstantial evidence, MAI–CR2d 3.42, contending that the state's evidence pertaining to Count I was circumstantial. While a trial judge must instruct on circumstantial evidence if the evidence in the case is *wholly* circumstantial, the judge need not submit the instruction where both direct and circumstantial evidence exist. *State v. Bannister*, 680 S.W.2d 141, 148 (Mo. banc 1984), *cert. denied* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). The distinction between direct and circumstantial evidence was explained by the supreme court in *State v. Lasley*, 583 S.W.2d 511 (Mo. banc 1979):

> This court has defined direct evidence as " 'evidence which if believed proves the existence of the fact in issue without inference or presumption; while circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.' " The distinction is not cast in terms of the weight to be accorded each type of evidence, but in terms of the pattern of logical inference which must be employed in reasoning from circumstantial evidence.

*Id.* at 516. (Citations omitted.)

Count I charged that defendant, acting with another, stole a motor vehicle in violation of § 570.030 by "appropriating" the Brames' Oldsmobile without their consent and with the purpose to deprive them of it. "Appropriate," as used in § 570.030, RSMo Cum.Supp.1984, is defined as "to take, obtain, *use,* transfer, conceal, or retain possession of." § 570.010(3), RSMo Cum. Supp.1984). (Emphasis ours.)

■ There was at least some direct evidence that defendant appropriated the Brame automobile. Cretia Harden testified that on the night of the crime defendant was in possession of a blue Oldsmobile she identified from a photograph as the Brame vehicle. Alice F. Pollard likewise identified the car she saw defendant get out of as the Brames' Oldsmobile. Because of this direct evidence, the trial court did not err in refusing defendant's requested instruction.[3]

Defendant also asseverates that the Circuit Court for the City of St. Louis lacked venue to proceed on Counts V, VI, VII, X and XI, which were based upon the incidents at the Schnucks store, because "the state charged these counts occurred solely in the County of St. Louis." Defendant raises the issue of venue for the first time on appeal, and asks us to review his contention under the "plain error" doctrine.

In *State v. Speedy*, 543 S.W.2d 251, 254 (Mo.App.1976) we held:

> *Absent a waiver,* venue must "be proved because the accused, under the Sixth Amendment to the Constitution, is guaranteed the right to a public trial by an impartial jury in the state and district wherein the crime shall have been committed." But, as held in numerous cases, including *Eichelberger v. State*, 524 S.W.2d 890 (Mo.App.1975), venue is not an integral part of a criminal offense and need not be proved beyond a reasonable doubt or by direct evidence, but it may be inferred from all the evidence.

(Citations omitted.) Furthermore, "[i]t has long been established that an accused's right as to the place of a trial arising under statutory or constitutional provisions *is a personal privilege which may be waived.*" *Id.* at 255. In *State v. Wood*, 596 S.W.2d 394, 401 (Mo. banc 1980), the supreme court held that a defendant may waive the issue of venue by proceeding to trial without objection.

---

**3.** During oral argument defendant attempted to extend his point on appeal, contending that the evidence pertaining to Count VII, the robbery of Mr. Trampe's mother, was also wholly circumstantial. While defendant has failed to properly raise this issue, we are inclined to view defendant's statement that he was "going to rob these older people" and Mr. Trampe's testimony as some direct evidence defendant robbed Mrs. Trampe.

■ We find, under these circumstances, that defendant waived any right he may have had to be tried in St. Louis County on Counts V, VI, VII, X, and XI. No error, plain or otherwise, was committed.

Finally, defendant contends that the trial court erred in overruling his motion for judgment of acquittal at the close of the state's case on Count VII, which charged him with the robbery of Mr. Trampe's 90-year-old mother.

■ We believe the state made a submissible case. Although Mrs. Trampe did not testify, Cretia Harden heard defendant say "I'm going to rob these older people" and saw him approach the Trampes with a gun. Mr. Trampe said that his mother was seated in the car with her purse on her lap when he opened the trunk to load the groceries. Mr. Trampe was accosted by a man with a gun who struck him so hard he was rendered unconscious. When he regained his senses his mother's purse was missing. This evidence was sufficient to submit the robbery charge to the jury.

Judgment affirmed.

SMITH, P.J., and DOWD, J., concur.