SHIELDS, J.
This action was brought in the court of common pleas of said Coshocton county to contest the validity of what purports to be the last will and testament of Absolom Lynch, deceased.
In the first cause of action in his petition the plaintiff, Clarence Coulter, alleged, in substance, that he is the only heir at law of the said Absolom Lynch, deceased, who at his death was the owner of an estate in said county consisting of real and personal property; that on April 18, 1917, a certain paper writing purporting to be the last will and testament of the said Absolom Lynch, dated November 10,1915, was presented for and admitted to probate by the probate court of said county; that letters testamentary were issued thereon by the said probate court to the defendant, S. F. Chaney, as executor, and that the other defendants are named as legatees and devisees of the said Absolom Lynch, deceased; “that said paper writing is not the last will and testament of the said Absolom Lynch, deceased, but was produced bj'the fraudulent and feloneous act of the defendant, S. F. Chaney, who was the writer thereof, and the same does not speak the will and intent of the said Absolom Lynch, deceased; that the signature of the said Absolom Lynch to said paper writing was produced and appended thereto by means of fraud and circumvention, and its contents were never authorized or made known to the said Absolom Lynch nor acknowledged by him; that said paper writing and the devises and bequests therein provided were procured and made by the practice of fraud and undue influence and by means of false and fraudulent representations and forgery, and because of the premises said paper writing does not speak the purpose or wish of said decedent.” Wherefore the plaintiff prays that an issue be made up in respect to said paper writing, that the same be set aside and declared to be not the last will and testament of the said Absolom Lynch, deceased.
In the second cause of action the plaintiff alleges that the defendant, S. F. Chaney, claiming to act as executor under the provisions of said alleged last will and testament of the said *484 Absolom Lynch, deceased, and in pursuance of the terms thereof, commenced an action in said probate court to sell the real estate of said decedent, and threatens to dispose of the personal estate of said decedent, in violation of the property rights of the plaintiff in said estate, and an order of court was sought and granted restraining the probate judge of said county from issuing an order authorizing a sale of said property, and against the said S. F. Chaney from making said sale, as executor, pending the determination of this action.
Issues of fact were joined by separate answers filed by the several defendants, including the guardian ad litem for the minor defendants therein named, denying all the allegations in the first cause of action in the plaintiff’s petition, except that on March 17, 1917, the said Absolom Lynch died leaving the plaintiff as his only heir; that at the time of his decease he was' the owner of an estate in real and personal property in said county; that on April 18, 1917, a paper writing purporting to be the last will and testament of the said Absolom Lynch, dated November 10, 1915, was presented to- and admitted to probate by the probate court of said county; that letters testamentary were issued thereon by said probate court to the defendant, S. F. Chaney, as executor, who is now acting as such; that by the terms of said will the plaintiff and the defendants, except the defendant, Milo C. Ely as probate judge and S. F. Chaney as executor, are named as legatees and devisees of the said Absolom Lynch, deceased.
Answering the second cause of action in said petition said defendants deny all the allegations therein except that as executor under and by virtue of the last will and testament of the said Absolom Lynch, deceased, the defendant, S. F. Chaney, commenced an action in the probate court of said Coshocton county to sell the real estate of said decedent, and that the defendant, Milo C. Ely, is the duly elected and acting probate judge of said county. With the exceptions noted, the defendants and each of them deny each and every allegation contained in said causes of action numbered 1 and 2 in the plaintiff’s petition.
Although an issue was made by said pleadings, it was ordered by the court that it be ascertained by the verdict of a jury whether said paper writing was or was not the last will and testament of the said Absolom Lynch, deceased. The case hav *485 iñg been submitted to a jury, it was found by its verdict that said paper writing purporting to be the last will and testament of the said Absolom Lynch, deceased, was not his last will and testament. A motion was filed to set aside said verdict and for a new trial for numerous grounds stated therein; also a motion for judgment non obstante veredicto, which said motions were overruled and a judgment was entered upon said verdict. Thereupon a bill of exceptions was taken containing the evidence in said trial, including the rulings of the trial court thereon, the written requests submitted before argument to be given in charge to the jury, including those refused and those given, and the charge' of the court to the jury, and by a petition in error filed in this court the plaintiffs in error seek a reversal of said judgment.
It appears that the said Absolom Lynch, whose will is in controversy, for many years prior to his death lived upon and owned a valuable farm of about one hundred and seventy-five acres, in Coshocton county, and also owned at said time personal property which after his death was. appraised at about $5,500. He lived to be some eighty-two years of age and died March 17, 1917. His wife died in 1914. Two children were .born of their marriage, a son and a daughter, the former, William Lynch, intermarried with Melissa Lynch, having died in 1908, without issue, and the daughter, intermarried with-Coulter, having died long prior to the death of the son William Lynch. Of this latter marriage one child was born, namely, Clarence Coulter, the plaintiff below, who is married and has two children, Walter and Benson Coulter, both young in years. It appears that the son William, lived upon his father’s farm until his death, after which, perhaps in 1909, Clarence Coulter moved upon said farm, occupying a separate dwelling thereon, and he and his grandfather operated the farm together from that time until the spring of 1915, when Clarence Coulter went to Detroit, Mich., but afterward returned to Coshocton, where he lived up to the time of said Absolom Lynch’s death. Melissa Lynch, wife of the deceased son William Lynch, remained in the family of the said Absolom Lynch, after her said husband’s death, and so continued after the death of the wife of the said Absolom Lynch as his housekeeper.
*486 It also appears that the said Absolom Lynch made three wills, the first in 1904; the second in 1909, and the third November 10, 1915, all written by the defendant S. F. Chaney. It is said that these several wills were made because of the changed condition in the said Absolom Lynch’s family — the death of his son William followed by the death of his wife. By the terms of said first will, after providing for his son William and the said Absolom Lynch’s wife, Clarence Coulter was to receive the sum of $1,000. By the terms of the second will made some two years after the son William’s death, in 1909 or 1910, the said Absolom Lynch bequeathed the sum of $2,000 to Nancy E. Chaney, wife of the said S. F. Chaney and a sister of the deceased wife of the said Absolom Lynch, who it appears rendered certain services to her said deceased sister in the early part of the latter’s early married life, and' he also bequeathed in said second will to the defendants, Fern Chaney and Clay Chaney, sons of the said S. F. Chaney, the sum of $500 each, to Melissa Lynch the sum of $2,000 and to his wife a life interest in said farm together with his interest in the live stock thereon and the accruing interest on a certain fund to be created and mentioned therein, and at her deáth said farm was devised to Clarence Coulter, subject to the payment of said bequests. Some five years later, and on November 10,1915, the wife of the said Absolom Lynch having died in the meantime, he made a third will in which he again made the same bequests as in the second will, namely, $2,000 to Nancy E. Chaney and $500 each to Clay and Fern Chaney, $3,000 instead of $2,000 to Melissa Lynch, $500 each to Clarence Coulter’s two children, and the residue of his estate was devised to Clarence Coulter, giving to his executor therein named, the said S. F. Chaney, who was also named as executor in the said second will, directions to sell said farm, out of the avails of which said bequests were to be paid. This third will was executed in the presence of two witnesses, and all the formalities required by law in its execution and acknowledgement were duly observed and complied with. It was kept in the custody of the said S. F. Chaney until April 18, 1917, when it was duly admitted to probate by the probate court of said Coshocton county, and on said day the said S. F. Chaney, named as executor therein, was duly appointed and qualified by said court as such executor, who on *487 May 10, 1917, commenced an action in said court to sell the real estate of said decedent under the terms of said will, and who was enjoined from so doing for the reasons set out in said petition.
Absolom Lynch lived in Perry township, some miles distant from the village of West Carlyle in said county. He was an industrious and frugal farmer and, as stated, he lived to attain the ripe age of some eighty-two years. While there was naturally more or less weakening of his body and faculties because of his age, still it does not appear that the mental grasp of the said Absolom Lynch of matters touching his farm and other interests, including his family relations and relatives, was affected at the time of the making of his last will. During the lifetime of his wife, he and his wife frequently visited the said S. F. Chaney and his family, who in turn visited them. After the death of his wife, the said Absolom Lynch continued to call on the said S. F. Chaney whenever his business called him to said village.
S. F. Chaney, as stated, was a brother-in-law of the said Absolom Lynch. He is now and for over thirty years last past has been the postmaster at said village of West Carlyle, having said office in his store where he is now and has been actively engaged in business during said time, with the exception perhaps of a short time caused by the burning of his store. He is also a notary public and as such transacts more or less business in that community incident to said office. For many years prior to his death it appears that the said Absolom Lynch entrusted much of his business correspondence, including the writing of his several wills, to the said S. F. Chaney, and whenever at said village, up to the time of his death, the latter’s store was made his headquarters.
For the purposes of this opinion, the foregoing statement sufficiently shows the changed family relation of the said Absolom Lynch from time to time, the several wills made by him, and his relations to the said S. F. Chaney who wrote said wills.
Numerous grounds of error are assigned in the petition in error why the verdict in this case should be set aside and the judgment rendered thereon should be reversed. The record is indeed a voluminous one, all of which together with the ably prepared and well-arranged briefs of counsel we have not only read, but have endeavored to give to them careful and thoughtful con *488 sideration. Without here repeating such grounds of error, we will consider such grounds only as we deem material and necessary to a determination of the questions arising upon the record in the case.
It was contended that the trial court erred at the beginning of the trial below in permitting the plaintiff below to call for cross-examination S. F. Chaney, the party who wrote the will in question. Had the action been one for the construction of said will, or any portion of the same, testimony of the scrivener as to instructions given him by the testator at the time of the preparation or execution of the will would not have been competent, but such is not the only relation of the witness here. True he was the scrivener, but he is also a party, and although a party as executor, under the issue raised by the pleadings, he is made to appear in the attitude of an adverse party, and we are therefore of the opinion that said witness was subject to the provisions of Sec. 11497 G-. C. and that the action of said court in this respect was not erroneous.
An examination of the record shows that a considerable portion of it consists of the testimony of several witnesses who testify to certain declarations made by the testator in his lifetime at various times as to what disposition he intended to make of his said farm, such declarations having been made, as said witnesses testified, both before and after the execution of said will. Objections were made to this class of testimony, and on the overruling of such objections, exceptions were preserved which form the main ground of error urged here.
It will be borne in mind that the action herein was not one to construe the will of the said Absolom Lynch, deceased, but to set it aside for the reason stated in the petition. In the revision and codification of the statutes it is provided that:
“Section 10503. A person of full age, of sound mind and memory, and not under restraint, who has property, or an interest therein, may give and bequeath it by last will and testament lawfully executed.”
“Section 10505. Except nuncupative wills, every last will and testament must be in writing, but may be handwritten or typewritten. Such will must be signed at the end by the party making it, or by some other person in his presence and by his ex *489 press direction, and be attested and subscribed in tbe presence of such party, by two or more competent witnesses, wbo saw the testator subscribe, or heard him acknowledge it. ’ ’
Here it appears in testimony that the said Absolom Lynch on November 10, 1915, who was then “of sound mind and memory and not under restraint,” requested S. F. Chaney to prepare and write his will, and after writing it, and after the said Absolom Lynch read it over and expressed his satisfaction with the same, and after declaring it to be his last will and testament to George Magruder and J. W. Hoover, he thereupon signed the same in their presence, and the said Magruder and Hoover thereupon signed the same in the presence of each other, at his request, as witnesses thereto. It thus appears that all the formalities required by law in the execution of a will to clothe it with the characteristics of a will were complied with?®
The different pieces of paper on which the will was written and attached to each other, and the difference in the size and quality of the paper on which the attestation clause was written, as well as the time it was written and attached to the other parts of the will, with reference to the time the body of the will was written, were made the subject of comment by counsel for the plaintiff below as being unusual, if not suspicious. At the time said witnesses to the will subscribed their signatures thereto the testimony is that they were told why the tablet paper was used, and the scrivener testified that the sheet on which the attestation clause appears was purposely left open and unattached to the body of the instrument to enable the testator after reading the will to make any alterations or additions thereto that he might desire. Ordinarily it is reasonable to suppose that one writing a will would use not only the same grade but the same size sheets of paper, but under the explanation given by the witness why it was not so done, when considered in connection with the testimony of the subscribing witnesses to the will, it would seem that it was innocently and not fraudulently done, aided as it would be, in the absence of evidence to the contrary, by the presumption that the will was drawn in accordance with the instructions given by the testator. Morris v. Osborne, 39 O. A. & C. 280 (27 N. S. 161).
*490 The authorities are uniform in holding that there is no valid objection to the use of different sheets or.tablets of paper upon which to write a will, when fastened or pasted together as to constitute one instrument. I Rockel, Probate Practice, Sec. 1036, says:
“A will is valid if written upon several pieces of paper. It is valid even if the testator’s signature is on a piece of paper separate from the dispositive clauses of the will; and it is held that it is not necessary that these papers be fastened together if their sense connects them. But it must be shown from the several pieces of paper themselves that they constitute but one entirety.” 1 Schouler, Wills, See. 284; Page, Wills, Sec. 161, and numerous cases cited by Rockel.
The petition charges that the attestation clause to said will was procured by undue influence and fraud. On the subject of testamentary capacity of the testator at the time he executed said will, the trial court instructed the jury “to find on this issue in favor of the defendants and that the said Absolom Lynch was of sound mind and memory, ’ ’ so that this issue was eliminated from the case.
It is contended on behalf of the plaintiff in error that with the will executed in form and as described by the subscribing witnesses thereto, with no part of it ambiguous or uncertain in its terms, but intelligible and readily understood, the same having been admitted to probate and letters testamentary issued thereon, that the trial court erred in admitting the testimony of witnesses both before and after said will was executed. The solution of the question presented is rendered more or less difficult by reason. of the fact that the. condition of mind and memory of the testator was left in the ease, and testimony in relation thereto was permitted to go to the jury off and on until the close of the case. It is apparent that the action of the trial court in so instructing the jury was fully warranted. So long as the • question of a want of testamentary capacity of the testator to execute a will was made' an issue in the case, so long were these declarations of the testator competent, either before, after, or at the time of the execution of the will, “as showing the former state of mind of the testator, his long settled purposes, his affections or dislike, and the execution and contents of former wills, ’ ’ *491 etc. We are aware that the holdings of courts in different jurisdictions are not uniform on this question, but we think that the trend of the decisions by the Ohio courts sustains the holding here made. But while we think that such declarations are competent as tending to prove the state of mind of the testator, they are not competent to prove the fact of undue influence, which rule of law was laid down by the Cuyahoga circuit court in the case of Boepple v. Mellert, 40 O. A. & C. 610 (24 N. S. 409-410).
1 ‘ The law is, that declarations of the testatrix, made before or after the making of the will, if made near such time, are admissible to prove the state of the mind of the testatrix, but are not admissible to prove the fact of undue influence. If the declarations tend to prove both the fact of undue influence and the state of mind of the testatrix, then the court must admit the testimony and instruct the jury that it can consider the declarations only so far as they tend to prove the state of mind of the testatrix. ’ ’
This is the rule also stated in 3 Jones, Commentaries on Evidence, See. 483, wherein the author says:
“It is highly necessary to watch the line which marks the purpose for which declarations of the testator may be admitted. We have demonstrated that under ordinary circumstances they are not admissible at all where the will is clear; that in case of ambiguity they are admissible for explanatory purposes; that in eases where the mental condition of the testator is challenged, they are part of the res gestae, the making of the will. It now becomes necessary to emphasize that declarations of the character treated in the last section are admissible only for the purpose of proving the condition of the testator. They afford no substantive proof of fraud, duress or undue influence, and are admissible for no such purpose. There must be independent proof and evidence exclusive of such declarations. If the statements are mere recitals of facts, and there is no such independent proof of undue influence, they are, of course, pure hearsay and inadmissible. ’ ’
The same rule is also stated in 3 Alexander, Commentaries on Wills, See. 608:
“Declarations of a testator made in connection with the ex-execution of his will, when pertinent to the issue, are admissible as part of the res gestae. As proof of the fact, however, of un *492 due influence, declarations not contemporaneous with the execution are inadmissible; they must be treated as hearsay. ’ ’
Same rule is laid down in Page, Wills, also in Schouler, Wills.
Many adjudicated cases are cited in the foregoing text books sustaining the rule therein stated, but which we do not deem it necessary to refer to.
It will be seen from the charge of the court given in the case before us that the distinction observed in the instructions given to the jury in the case of Boepple v. Mellert, supra,, heretofore referred to upon the subject of testamentary capacity and undue influence, was not observed, nor was the jury instructed upon the subject of undue influence in its application to the case before us, either as to its meaning or its effect, or the burden of proof, for which we think the trial court erred. We think it is but proper to say in this connection that the nature and importance of the case, giving rise as it did to a variety of distinct issues, required that the jury should have been specially and properly instructed as to the law pertaining to such issues beyond the mere reading of the pleadings.
Among other things, the petition charged that the will in question was procured by fraud, “and by means of false and fraudulent representations and forgery.” Counsel for plaintiff in error argued that the declaration of the testator made before and after the time of the execution of said will, testified to by witnesses heretofore referred to, as bearing upon testamentary capacity and undue influence, were also incompetent as bearing upon the alleged forgery of said will, and that the trial court therefore committed error in admitting them for said purpose. Without here repeating the testimony of said witnesses and giving only the substance of it, said witnesses testified that on numerous occasions, before, after and near to the time of the execution of said will, the testator stated he desired that his grandchild, Clarence Coulter, should have and possess his farm after his death, and at the death of Clarence, the same should go to his two children; that he desired that said farm should not be sold; that, he at different times refused to sell any part of it, etc.
An examination of the authorities shows that the courts are not in accord on the subject of admitting declarations of a tes *493 tator made before or after the execution of his will, where forgery is the issue. The two leading cases cited by counsel in their briefs are Throckmorten v. Holt, 180 U. S. 552 [45 L. Ed. 663; 21 Sup. Ct. 474], and State v. Ready, 78 N. J. L. 599 [75 Atl. 564; 28 L. R. A. (N. S.) 240], the former holding that:
“Declarations, whether oral or written, made by a testator, either before or after the date of an alleged will, unless made near enough to the time of its execution to become part of the res gestae, are not admissible as evidence in favor of or against the validity of the will. ’ ’
And the latter holding that:
“Where the issue is whether a will was executed or whether a will was made to have a certain tenor or provision, the preexisting testamentary design of the alleged testator is always relevant; and, to evidence the existence of that design, his antecedent statements are admissible, when not too remote to be material. ’ ’
Both cases involve forgery of a will, the latter being a criminal case. It is needless to remark that both are interesting and ably written opinions upon the subject treated of, written as they >vere by the distinguished jurists who for many years have graced the benches of their respective courts and have enriched and dignified the profession with their learning in their respective spheres of judicial duty.
We have no desire to review these opinions by contrasting the views therein expressed, except to add that the views in the case first cited seem to harmonize with the rule already stated in Jones’ Commentaries on Evidence and Alexander’s Commentaries on Wills, rather than the case last cited. We refer more particularly to the principal of law heretofore referred to that something more should appear than the mere expression of a wish or future intention by the testator in casual conversations had with him, or in the language of the text-writers “there must be independent proof and evidence of such declarations” and unless so supported, they are to be regarded as hearsay. True exceptions to this rule might find favor in the admission of such declarations if made and they became part of the res gestae, but the testimony shows no such conditions exist in this case. As *494 stated, they would be competent upon the question of testamentary capacity, and they might also be competent in a case where undue influence was charged, as where the testator was of weakened and impaired mind owing to old age or sickness, or accident, but here the mental faculties of the testator while advanced in years were shown to be unimpaired at the time of executing said will. Commenting upon this class of evidence, Mr. Justice Peek-ham in the case of Throckmorton v. Holt, supra, referred to on page 573 in his opinion in said case says:
“After much reflection upon the subject, we are inclined to the opinion that not only is the weight of authority with the cases which exclude the evidence both before and after the execution, but the principles upon which our law of evidence is founded necessitate that exclusion. The declarations are purely hearsay, being merely unsworn declarations, and when no part of the res gestae are not within any of the recognized exceptions admitting evidence of that kind. Although in some of the cases the remark is made that declarations are admissible which tend to show the state of the affections of the deceased as a mental condition, yet they are generally stated in cases where the mental capacity of the deceased is the subject of the inquiry, and in those cases his declarations on that subject are just as likely to aid in answering the question as to mental capacity as those upon any other subject. But if the matter in issue be not the mental capacity of the deceased, then such unsworn declarations, as indicative of the state of his affections, are no more admissible than would be his unsworn declarations as to any other fact. ”
Again, in commenting upon the uncertainty and unreliability of this class of evidence, the said justice on page 578 in said opinion says:
“There is-another reason why no exception should be made in favor of such evidence upon which to build a presumption or inference of forgery, and that is the inherent weakness and danger of the evidence itself. No inference is generally more uncertain or unreliable than that which is sought to be drawn upon the question of the genuineness of a will from the alleged condition of a testator’s mind towards relatives or others, as evidenced by his declarations. It is every day experience that declarations of that nature are to the last degree unreliable as a basis for an inference as to probable testamentary disposition of property. Those who thought by reason of such declarations that they *495 ■would certainly be remembered in tbe will of the testator are so frequently disappointed, and that too in cases where there is not the remotest suspicion of forgery, that it would seem exceedingly unsafe to permit a jury to draw an inference based upon such evidence, relative to the genuine character of the instrument propounded as a will. ’ ’
And on page 579 said justice says:
“The motives underlying and causing the particular provisions of a will may be so various and so hidden from observation that it is in the highest degree unsafe to draw an inference of forgery based upon declarations as to testamentary intentions which are so subject to change and which declarations may or may not represent the true feelings of the testator or even his actual testamentary intention at the time when spoken. The result is very apt-to be a breaking down of the safeguards provided by statute for the proof of the due execution of a will, and to provide in place of that proof evidence which is in itself of the most unsatisfactory nature, and from such evidence permit a jury to draw a still more uncertain inference of forgery. ’ ’
It is true as counsel for defendant in error say that the foregoing decision rendered by the United States Court was made by a divided court, but it is the opinion of the majority of the court, and such majority declares the law. It is to be noticed that the rules of law laid down in this decision find support in many adjudicated cases in other jurisdictions. The New Jersey ease referred to while a well considered case, it will be noticed that outside of a review of the case of Throckmorton v. Holt, and a reference or two to Massachusetts and New York cases, cases in New Jersey are for the most part cited in the opinion. However this may be, the fact is, as already stated, that there is a conflict of authorities on the admissibility of declarations of this character, especially those made after the execution of a will.
Without extending our remarks further upon this branch of the case, we think the better reasoning and the weight of authority is, in the absence of some independent proof being shown in connection with declarations of the character referred to, that they were incompetent and should have been excluded, not however upon the question of testamentary capacity, but upon the issue of forgery. In this connection it is but fair to state that the trial court did give to the jury in charge before argument *496 the following request submitted by counsel for the defendants below:
“12. I charge you as a matter of law that if you find from the evidence that Absolom Lynch executed this will on the 10th day of November, 1915, it would not matter what he may have said at other times, either before or after said date, about his intentions and you should disregard all such declarations and your verdict should be for the defendants and that this is the last will and testament of Absolom Lynch. ’ ’
While this request was given, still the testimony referred to was allowed to go to the jury and was not withdrawn, nor were the jury instructed not to consider the same except as implied from said request, for which we think the court erred to the prejudice of the plaintiffs in error.
Other errors are complained of in the admission of testimony on the trial below, but we do not deem them of sufficient importance to merit discussion, especially in view of the conclusions we have reached in the case.
Numerous exceptions were taken to the action of the court below in its general charge to the jury as given and in its refusal to charge as requested before argument, which are assigned as error. Requests Nos. 1, 3, 4, 5, 7, 8 and 10 were refused, Nos. 2, 6, 9, 11 and 12 were given. Nos. 1, 3 and 4 involved questions of fact which will be noticed hereafter.
Request No. 5 is as follows:
“5. I charge you as a matter of law that the order of probate introduced in this case is prima facie evidence of the due attestation, execution and validity of the will introduced in evidence in this case, and, unless you find by preponderance of the evidence that this prima facie case is overcome by the evidence of the plaintiff, your verdict should be for the defendants, and that said will is the last will and testament of Absolom Lynch. ’ ’
“6. I charge you as a matter of law that the burden is upon the plaintiff to prove by preponderance of the evidence that the will introduced in evidence is not the last will and testament of said Absolom Lynch, and, in order to warrant the setting aside of the will, such evidence should not only outweigh the evidence adduced by the defendant, but also the presumption arising from the order admitting the will to probate, and, unless *497 it does so outweigh such evidence and order, your verdict should be for the defendants, sustaining the will.”
Section 12083 G. C. provides:
“On the trial of such issue, the order of probate shall be prima facie evidence of the due attestation, execution, and validity of the will or codicil.”
That the instruction in request number 5 contains a correct proposition of law under the foregoing section of the code is not open to question, but is the same instruction contained in re-, quest number 6, which was given? If it is, then the trial court did not err in failing to repeat said request number 5, for it is held that one instruction to the jury by the court upon a given subject, when properly given, is all that is required. Said Sec. 12083 was recently before the Supreme Court of this state and was construed by it in the case of Hall v. Hall, 78 Ohio St. 415, wherein it reversed the judgment of the circuit court—
“for the reason that the charge to the jury (in the court below) is misleading and erroneous in that it nowhere distinctly states nor sufficiently emphasizes that the order of probate of the will, by the probate court, raises a presumption that the will so probated is the valid last will and testament of Mercy A. Hall; that the court did not clearly explain to the jury the legal effect of the provision of the statute, ‘that the order of probate shall be prima facie evidence of the due attestation, execution and validity of the will or codicil/ that the jury was not instructed as it should have been instructed, that before they would be entitled to return a verdict setting aside the will they must be able to find that the evidence adduced by the contestant, Charles F. G. Hall, outweighs both the evidence adduced by the defendant, Anna S. Hall, and the presumption arising from the order of the probate court admitting the will to probate as the valid last will and testament of Mercy A. Hall. ’ ’
In the instruction given in the case before us the court did charge clearly that the burden was upon the plaintiff to show by a preponderance of the evidence that the said will was not the will of said Absolom Lynch to warrant it being set aside, and that such evidence should not only outweigh the. evidence adduced by the defendants below but also the presumption arising from the order admitting the will to probate, etc., but does it appear that the trial court distinctly stated and sufficiently *498 emphasized the effect of the order of the probate of said will, or that said court clearly explained to the jury the legal provision of said statute f Interpreting the rule as laid down by the Supreme Court we think it did not, and in failing to so instruct the jury we think the court erred to the prejudice of the plaintiffs in error.
Requests numbers 7 and 8 were considered and disposed of in a former part of this opinion.
Request number 10 is as follows:
“I charge you as a matter of law that prima facie evidence of a fact is such evidence as, in the judgment of the law, is sufficient to establish the fact, and, if not rebutted, remains sufficient for that purpose.”
This request was refused, and we think was improperly refused. Under Sec. 12083 G-. C. the order of probate carried with it prima facie evidence of the validity of said will and such presumption continue until overcome by competent evidence. In Gomien v. Weidemer, 39 O. A. & C. 1 (27 N. S. 177), which was a will contest case, Judge Walters in announcing the opinion in said case, quoting from Crane v. Morris, 31 U. S. 598 [8 L. Ed. 514], says:
“Prwna facie evidence of a fact, says Mr. Justice Story, is such evidence as in the judgment of the law is sufficient to establish the fact, and if not rebutted, remains sufficient for that purpose.
“Prima facie evidence of a fact is such as establishes the fact, and unless rebutted or explained by the evidence becomes conclusive and is to be considered as if fully proved. State v. Burlingame, 146 Mo. 207 [48 S. W. 72].
We think that said request number 10 should have been given and in refusing to give it the trial court committed prejudicial error.
Various exceptions were also taken to the general charge of the trial court to the jury, and, among other things, that the trial court erred in not fully instructing the jury as to the law to be applied under the different issues raised by the evidence in the case. As already stated, the record in the case is a voluminous one, and the evidence raised various legal questions on which it became the duty of the trial court to specially instruct *499 the jury. This is noticeably true with reference to the definitions of testamentary capacity, undue influence and fraud, and the legal presumption arising in the absence of proof tending to sustain either, which was omitted, nor does it appear that the jury were instructed as to the effect of the alleged undue influence or fraud practiced at the time of making said will, be cause unless it resulted in producing the effect charged, such proof would be unavailing to invalidate said will for undue influence or fraud. The evidence offered upon the trial raised a multiplicity of questions arising out of such evidence, it is true, but such fact in no wise procured exemption from duty of the trial court to so charge the jury that the verdict of the1 jury should be responsive to the facts and the law. As held in the case of Parmlee v. Adolph, 28 Ohio St. 10:
“A charge to the jury should be a plain, distinct, and unambiguous statement of the law as applicable to the case made before the jury by the proof, and not mere abstract legal rules. ’ ’
"We are therefore of the opinion that the exceptions to said "charge in the respect mentioned are well taken.
Referring to said charge upon the question of fraud, the trial court charged the jury as follows:
“Fraud is never presumed, but must in all eases be clearly proved. Fraud alleged does not necessarily need to be proven by direct evidence. Like all other facts, it may be proven by circumstances alone, but must be clearly proven, so you will inquire into all the facts and circumstances surrounding the making of this will. ”
We are aware that it is not unusual to find courts laying down as a rule of law that “fraud must in all cases be clearly proved,” but we can not subscribe to the correctness of such rule in the face of the established rule by the Supreme Court of this state to be found in decided cases from time to time. While it is recognized that different degrees of proof are required in certain civil eases, in a ease, for instance where the reformation of a contract is sought upon the ground of mutual mistake, clear and satisfactory proof is required of the party seeking such reformation, or where a family relative renders services to another in the same family, and in the absence of an express contract seeks *500 a recovery for such services, clear and convincing proof is required, or where a party seeks to engraft a trust upon an instrument in writing, clear and convincing proof is required, but in a case like the one before us, which is a civil action, is anything more than a preponderance of proof required to sustain the allegation of fraud?
In Jones v. Greaves, 26 Ohio St. 2 [20 Am. Rep. 752], it is held that:
“On the trial of a civil action wherein the claim or defense is based on an alleged fraud, the issue may be determined in accordance with the preponderance or weight of the evidence, where the facts constituted the alleged fraud do, or do not, amount to an indictable offense.”
In Lyon v. Fleahmann, 34 Ohio St. 151, the judge announcing the opinion of the court in said case on page 156, cites with approval the case of Decker v. Somerset Ins. Co., 66 Me. 209 [22 Am. Rep. 562] and says:
“It can never be improper to call the attention of the jury to the character of the issue, and to remind them that more evidence should be required to establish grave charges than to establish trifling or indifferent ones. Such an instruction does not vitiate the rule that in civil suits a preponderance of evidence is all that is required to maintain the affirmative of the issue; for, as already stated, to create a preponderance of evidence, it must be sufficient to overcome the opposing presumption as well as the opposing evidence.”
In Mason v. Moore, 73 Ohio St. 275 [76 N. E. 932; 4 L. R. A. (N. S.) 597; 4 Ann. Cas. 240], which was a case involving the liability of bank directors for the publication of an alleged false statement of the bank’s resources and liabilities, the rule is there stated to be that a preponderance of the evidence only is required in such case. Other adjudicated cases in this state might be cited announcing the same rule. While we are aware that a different rule in like cases is recognized in other jurisdictions, the same as the rule laid down by the court below in the case at bar, yet we are of the opinion that the rule which prevails in Ohio is, that a preponderance of the evidence only is required in such case, and entertaining this view, we hold that *501 an instruction to the jury that a higher degree than a preponderance of proof was required, was prejudicially erroneous.
The court below also instructed the jury as follows:
“You are the sole judges of the credibility of the witnesses, and by your own experience in life you may determine what the proof is.”
This instruction insofar as the jury are the sole judges of the credibility of witnesses is correct, but is the remaining part of said instruction correct ? The trial court appears to have proceeded upon the assumption that the jury could substitute the result of their own experience in life in determining the proof.
It is scarcely necessary to say that the evidence in a ease, and not the jury’s experience in life, is the standard set by the law by which the rights of parties, under the law, are to be dedetermined. True there may be cases where the common knowledge of the jury, in considering evidence, may be exercised, as, for instance, in determining the value of services in an action upon a quantum meruit, as was held in the case of Hossler v. Trump, 62 Ohio St. 139 [56 N. E. 656], and the same rule might apply in a case for damages to property where the solution of the matter under inquiry could be aided by the jury’s own observation, experience and knowledge, but we know of no rule of law that permits the substitution of ,the juror’s experience in life for the sworn testimony of witnesses in a will case where the issues raised are determinable solely by the evidence under the law. Observation, experience and common knowledge, or either, find no place or application in such case, for the issues here are testamentary capacity, undue influence and fraud. The instruction given was clearly erroneous, and prejudicially so, calculated as it was to mislead the jury from confining their inquiry to the issues presented in the case.
As grounds for setting aside the verdict of the jury and the judgment of the court in this case it is alleged that “the verdict and judgment are contrary to the manifest weight of the evidence and law” and that “the verdict and judgment are not supported by any evidence.” Although not unmindful of the salutary rule laid down in Breese v. State, 12 Ohio St. 146 [80 Am. Dec. 340], that, “A judgment will not be reversed because *502 the verdict is contrary to the evidence, unless it is manifestly so, and that reviewing courts will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony,” we are constrained to say that we fail to find anything in this entire record, either of anything said or done, that can be construed, in our judgment, as indicating in any possible form or degree, that any undue influence was sought to be, or in fact was, exerted upon the said Absolom Lynch either before or at the time of the execution of his said will. Nothing whatever appears in the record showing that the testator at any time or place ever mentioned a word to anyone, or that he was at any time or place ever spoken to, concerning the disposition of his property, outside of the casual remarks made in conversations had with his neighbors in which they testified that he desired his farm to go to his grandchild after his death as heretofore referred to. We think there is an entire absence of proof to sustain, or tending to sustain the charge of undue influence.
With the question of testamentary capacity eliminated, the only remaining question is the alleged fraud practiced in obtaining the signature of the said Absolom Lynch to the attestation clause on the last sheet of said will. In the light of the history of the events transpiring immediately before and at the time of the execution of this will, as testified to by the scrivener and attesting witnesses to said will, is there anything appearing in the record to show that said will was not executed as claimed by them, and according to law? What circumstances or what declaration is shown by the record that tends to impeach the integrity of the testamentary act of the said Absolom Lynch on that day ? True, the provisions of his will then made vary with the provisions of the will shown to have been made by him some years before that time in respect to his said farm, according to his declarations made to some of his neighbors before and after the execution of the will in question, as testified to by them, but according to the testimony of the witnesses, Dr. B. Edwards, John W. Lee, Bene Pigman and John Funk, he may have had occasion to change his mind and did so for reasons satisfactory to himself, all of which he had the right to do. In said will he seems to have carried out the same desire and intention expressed by him in his will made before that time by providing *503 for his deceased wife’s relatives, as well as to provide for those nearest to him in affection. He likewise named as his executor the person to whom he had given his confidence in business correspondence and whom he had successively named as his executor in each of the different wills executed by him. Is such fact to be construed as a suspicious circumstance ? If it is, then it is time that men in the legal profession who consent to accept trusts created under wills drawn by them for other persons should take notice of their liability to be charged with questionable practices. It is sufficient to say that the imputation is as unfounded as it is unjust. S. F. Chaney is not a beneficiary under said will, nor was he such under either of the other two wills executed by the said Absolom Lynch, and with the legal presumption in favor of the validity of said will, with nothing appearing but mere naked suspicion to outweigh or overturn it, we can not persuade ourselves as a reviewing court to approve the verdict of a jury setting aside the deliberate and solemn act of a person exercising his inherent right under the law and disposing of his property as he sees fit, provided, of course, that in the exercise of such right he was under no such constraint or moral coercion as to interfere with his free agency, nor are we ready or willing as a court to condone the accusation by a judgment that the scrivener of such a will, made under the circumstances here described, is a forger. Character is still to be valued as an asset in human life, and the philosophy and mandate of the law require that a person shall not be deprived of it without sufficient and just cause. Here the testimony shows that S. F. Chaney is now and for a period of some thirty years last past has been the trusted agent of the Government as its postmaster in said village, and that the subscribing witnesses to said will have been known and recognized as reputable citizens of said village during said period of. time, and not a breath of suspicion is even whispered from the witness stand against their reputation or character for truth and general integrity. Can it be said that their sworn testimony is to be brushed aside and held for naught? Until the present system of administering justice in our courts shall be changed, we shall hesitate to believe it.
We do not join issue with counsel for the defendant in error in their contention that courts should be slow to disturb the *504 verdict of a jury, and should not do so, unless it appears that-such verdict is clearly and manifestly against the weight of the evidence. As already indicated in this opinion, we not only find the verdict in this case against the clear weight of the evidence, but that the allegations of the petition as to undue influence and fraud are wholly unsupported by the evidence, and we therefore hold that the motion submitted by the plaintiff in error at the close of all the evidence in the case should have been sustained by the trial court and the jury instructed to return a verdict sustaining said will, and that the motion of the plaintiff in error for a new trial should have been sustained, and in overruling said motibns said court erred.
For the errors indicated, the judgment of the court of common pleas will be reversed and said cause will be remanded to said court for such other action as may be deemed proper.
Powell and Houck, JJ., concur.